UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

SCOTT JOSEPH DELAHOUSSAYE     CIVIL ACTION

VERSUS     NO. 10-2624

PISCES ENERGY, LLC, ET AL     SECTION "H" (5)

### RULING ON MOTION TO ESTABLISH JURISDICTION AND APPLICABLE LAW

The matter before the Court is a Motion to Establish Jurisdiction and Applicable Law. In a status conference on December 8, 2011 the Court noted *sua sponte* that jurisdiction and applicable law had not been established in the above captioned matter. As such, the Court advised that these issues would be resolved on the briefs and invited all parties to file memoranda concerning their position on the issues. All parties filed their memoranda timely.[1]

### BACKGROUND

Facts

Pisces Energy LLC (hereinafter "Pisces") is the owner of oil production platforms located in the Mustang Island oil block off the coast of Texas. Specifically, Pisces is the owner of the platform at issue in this case, Mustang Island 739-A (hereinafter "MI-739-A").

---

[1] Pisces Energy L.L.C. (Doc. 151); One Beacon Insurance and Performance Energy Service, L.L.C. (Doc. 152); Richard John Boutte, Crescent Drilling Foreman, Inc. and Lexington Insurance Company (Doc. 154); Scott Joseph Delahoussaye (Doc. 155); Reply by Pisces Energy, L.L.C. (Doc. 162)

-1-

In August of 2009 Pisces determined that several of the existing production wells on the MI-739-A were in need of workover recompletion work. Accordingly, Pisces retained several companies to perform this work. Crescent Drilling and Production, Inc. (hereinafter "Crescent") was hired to provide a Consultant to manage the workover. Crescent, in turn, provided Richard Boutte (hereinafter "Boutte") as the manager for the project. In addition to Crescent and Boutte, Pisces had a contract with Warrior Energy Services, a subsidiary of Superior Energy Services (hereinafter "Warrior"), whereby Warrior agreed to provide a crew to perform work on the MI-739-A. Scott Delahoussaye was employed by Warrior as a coiled tubing assistant. Pisces also contracted with Performance Energy Services, LLC (hereinafter "Performance"), for the services of a crane operator to perform work on the MI-739-A.

This litigation arises out of the claims asserted by Scott Delahoussaye (hereinafter "Delahoussaye") regarding an incident that occurred on August 22, 2009. In the afternoon of August 22, 2009, it became necessary to move a "track stack" from the MI-739-A to the M/V LEEZA RENEE. The M/V LEEZA RENEE was a supply vessel positioned adjacent to the MI-739-A platform. In preparation for the transfer Delahoussaye was positioned on the M/V LEEZA RENEE. It is undisputed that Delahoussaye was aboard the M/V LEEZA RENEE for the purpose of assisting with this cargo transfer at the time of the incident. Delahoussaye alleges that he was injured during this transfer when he was struck by a piece of pipe that became dislodged.

Based on the allegations in his Complaint, Delahoussaye is a resident of Lafayette Parish, Louisiana. The M/V LEEZA RENEE was traversing the navigable waters of the United States of America near, or abutting the MI 739-A. It is uncontested that the MI-739-A is a fixed platform,

permanently embedded in the subsoil and seabed in the Gulf of Mexico.

The Parties Contentions[2]

Delahoussaye argues that admiralty jurisdiction is present and that based on the prevailing jurisprudence, maritime law is the applicable law to his claims of its own right and because the accident occurred over the water. Additionally, Delahoussaye asserts that general maritime law applies to his claims against all defendants, even if the Outer Continental Shelf Lands Act applies.

Boutte, Crescent and Lexington Insurance Company (hereinafter "Lexington") assert that the Court has jurisdiction to hear Plaintiff's claims under both admiralty and federal question jurisdiction. They further argue that federal maritime law applies to the substantive issues raised by Plaintiff's tort claims. Lastly, they note that the jurisdiction and applicable law claims pertaining to the contractual issues are not currently before the Court and will be the subject of future Motions and related briefing.

Performance and One Beacon Insurance Company (hereinafter "One Beacon") allege that this matter gives rise to both admiralty and federal question jurisdiction, through the Outer Continental Shelf Lands Act (hereinafter "OCSLA"). They note that in light of the jurisdictional overlap, the applicable law is general maritime law.

Pisces asserts that the Court has subject matter jurisdiction under the OCSLA. Pisces argues that because the OCSLA provides the appropriate basis for jurisdiction, it also provides the substantive law to be applied in this case. Pisces notes that under the OCSLA the adjacent state law, in this case Texas, would apply to the claims against Pisces. Thus, Pisces concludes that Texas

---

[2]Several of the parties argued whether or not there is a right to trial by jury. The Court notes that this issue is not currently before it, and therefore will not be addressed at this time.

state law is the appropriate substantive law.

In its Reply Memorandum in Support of their Motion to Establish Jurisdiction and Applicable law, Pisces notes that Plaintiff's claims against them are of a completely separate nature from his claims against other defendants. Pisces concedes, however, that in accordance with *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 115 S.Ct. 1043 (1995), satisfaction of the traditional maritime activity test as to Plaintiff's claims against the other defendants likely results in a finding of a traditional maritime activity test against Pisces. Additionally, they note that the *Grubart* holding would likely impose maritime law pertaining to the tort claims against Pisces as well.

## LAW AND DISCUSSION

Plaintiff's Complaints, both original and amended, have not yet established subject matter jurisdiction. Federal Courts "must consider jurisdiction *sua sponte* if not raised by the parties." *Howery v. Allstate Ins. Co.* 243 F.3d 912, 919 (5th Cir. 2001). The Court finds that it has jurisdiction to hear Plaintiff's Claims under both Admiralty and Federal Question Jurisdiction.

<u>Admiralty Jurisdiction</u>

In *Executive Jet Aviation v. City of Cleveland* the United States Supreme Court held that when the injury occurs on or over navigable waters and the injury occurs while the plaintiff is engaged in traditional maritime activities, then the federal Court is properly vested with admiralty jurisdiction. 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972).

In *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.* the United States Supreme Court further explained that a party seeking to invoke federal admiralty jurisdiction over a tort

claim must satisfy both a "location" and a "connection with maritime activity" test. A court applying the location test must determine whether the tort occurred on navigable water or whether injury suffered on land was caused by a vessel on navigable water. The connection test raises two issues. A court, first, must "assess the general features of the type of incident involved," to determine whether the incident has "a potentially disruptive impact on maritime commerce." Second, a court must determine whether "the general character" of the "activity giving rise to the incident" shows a "substantial relationship to traditional maritime activity." 513 U.S. 527, 534, 115 S.Ct. 1043, 130 L.Ed.2d 1024 (1995) (internal citations omitted).

First, it is undisputed that Mr. Delahoussaye was located on the M/V LEEZA RENEE when the incident occurred. It is also uncontroverted that the M/V LEEZA RENEE is a vessel situated in the navigable waters of the United States. As such, the location requirement is met.

Second, at the time of the incident Mr. Delahoussaye was loading cargo onto a vessel, the M/V LEEZA RENEE, adjacent to a fixed platform, the MI-739-A. At its most basic level, Mr. Delahoussaye's injury allegedly occurred during the course of loading cargo onto a vessel.

The Court has consistently held that the loading and unloading of a vessel is substantially related to traditional maritime activity. *Hamm v. Island Operating Co., Inc.* 2011 WL 5570644, 3 (5th Cir. 2011) citing *Drachenberg v. Canal Barge Co., Inc.* 571 F.2d 912, 917 (5th Cir. 1978); *see also Bachemin v. Mitsuie and Co. (USA, Inc.)* 713 F.Supp. 204, 206 (E.D.La.,1989) (holding that the mishandling of cargo during loading, shipment or unloading has a substantial relationship to maritime activity). Next, this Court finds that this type of accident can injure seamen and may damage vessels, thereby causing a delay in the shipment of goods in maritime commerce. *see*

*Hamm,* 2011 WL at *3.  Thus, this Court finds that the facts of this case indicate that this incident could have a potentially disruptive impact on maritime commerce.  *Grubart,* 513 U.S. at 534, 115 S.Ct. 1043; *see also Hamm*, 2011 WL at *3.

When the injury occurs on navigable waters, and when the injury has a connection with maritime activities, the Court is properly vested with admiralty jurisdiction. *Fogelman v. Tidewater Barges, Inc.,* 747 F.Supp. 348, 353 (E.D.La. 1990).  Both of the criteria are met here, thereby vesting this Court to hear Plaintiff's claims under admiralty jurisdiction.

Outer Continental Shelf Lands Act

The Outer Continental Shelf Lands Act (OCSLA) provides in pertinent part that: "the district courts of the United States shall have jurisdiction of cases and controversies arising out of, or in connection with (A) any operation conducted on the Outer Continental Shelf which involves exploration, development or production of the minerals, of the subsoil and seabed of the outer continental shelf, or which involves the right to such minerals."  43 U.S.C. § 1349(b)(1).

It is undisputed that the MI-739-A is a platform permanently affixed to the subsoil and seabed, with its primary purpose being the extraction of oil or other minerals. Additionally, the MI-739-A has a status as an artificial installation permanently attached to and erected on the seabed of the Outer Continental Shelf with the purpose of resource exploration, development, and production.  *See* 43 U.S.C. § 1331, et seq.; *see also Bartholomew v. CNG Producing Co.*, 832 F.2d 326 (5th Cir. 1987).  As such, this Court has federal question jurisdiction pursuant to the OCSLA ("The Constitution and laws and civil and political jurisdiction of the United States are extended to the subsoil and seabed of the outer Continental Shelf and to all artificial islands").

Applicable Law As To Plaintiff's Tort Claims[3]

The analysis of subject matter jurisdiction, however, is entirely independent of a choice of law analysis. *Broussard v. John E. Graham & Sons* 798 F.Supp. 370, 372 -373 (M.D.La.,1992). As such, the Court is now tasked with determining which body of substantive law will apply.

A federal district court can have jurisdiction over an action under the OCSLA without applying the statute to resolve the controversy. *Broussard* at 373; *citing Recar v. CNG Producing Co.,* 853 F.2d 367 (5th Cir. 1988). Moreover, the Fifth Circuit has held that when admiralty and OCSLA jurisdiction overlap, the OCSLA does not displace maritime law, and the Court is to apply general maritime law. *Hufnagel v. Omega Service Industries, Inc.* 182 F.3d 340, 350 (5th Cir. 1999) ("Because OCSLA does not displace general maritime law, substantive maritime law continues to govern where both OCSLA and general maritime law could apply."); *see also Smith v. Penrod Drilling,* 960 F.2d 456, 459 (5th Cir. 1992) ("when an event occurs on an OCSLA situs but also is governed by maritime law, maritime law controls."). Based on this jurisprudence, it appears evident to this court that substantive federal maritime law should apply to the tort issues pending before this Court.

This Court notes, however, that even if the Outer Continental Shelf Lands Act applies, federal maritime law will apply, and not Texas state law.[4] 43 U.S.C. § 1333(a)(2) provides that the law of the adjacent state is to be applied as surrogate federal law to the extent that state law is not

---

[3] The applicable law over the contractual claims in this case is not before the Court at this time. The analysis of the applicable law as to the contractual claims does not bear any impact on the Court's present discussion of Plaintiff's tort claims and will be the subject of a future Judgment of this Court.

[4] It is undisputed that the MI-739-A is a fixed platform located in the Mustang Island Block 739, in the Gulf of Mexico and adjacent to the coast of Texas on the Outer Continental Shelf, approximately seventy-five (75) miles from the coast. Therefore, it would be Texas, and not Louisiana, state law that would be applicable.

inconsistent with federal law. *Rodrigue v. Aetna Cas. and Surety Co.*, 395 U.S. 352, 357, 89 S.Ct. 1835, 1838, 23 L.Ed.2d 360 (1969); *see also Moses v. Marathon Oil Co.*, 749 F.2d 262, 263, n. 2 (5th Cir.1985). The Fifth Circuit applies a three-part test in order to determine whether the law of the adjacent state governs as surrogate federal law under OCSA's choice of law provision: (1) The controversy must arise on a situs covered by OCSLA (i.e. the subsoil, seabed, or artificial structures permanently or temporarily attached thereto); (2) Federal maritime law must not apply of its own force; (3) The state law must not be inconsistent with federal law. *Hamm v. Island Operating Co., Inc.* 2011 WL 5570644, 2 (5th Cir. 2011) *citing Union Tex. Petroleum Corp. v. PLT Engineering, Inc.*, 895 F.2d 1043, 1047 (5th Cir. 1990).

Based on the facts as presented in this case, at least two of the three conditions necessary for the application of state law as a surrogate to federal law are absent in this case. First, as noted previously, the incident involving Mr. Delahoussaye occurred on a vessel afloat on the navigable waters of the Gulf of Mexico, not on an OCSLA covered situs.

Secondly, whether federal maritime law applies of its own force turns on whether the Plaintiff has alleged a maritime tort against the defendants. *Hamm,* 2011 WL at *3 *citing Strong v. B.P. Exploration & Prod., Inc.*, 440 F.3d 665, 670 (5th Cir. 2006). The Fifth Circuit has previously held that "the test to determine the existence of a cause of action in maritime tort is identical with that applied to determine jurisdiction in admiralty." *Id. citing May v. Transworld Drilling Co.,* 786 F.2d 1261, 1265 (5th Cir. 1986). This Court has previously examined and determined that Delahoussaye's claims are properly within this court based on admiralty jurisdiction. Therefore, because Mr. Delahoussaye has alleged a maritime tort, federal maritime law applies of its own

force to Plaintiff's tort claims and Texas law cannot apply as surrogate federal law under the OCSLA.

**CONCLUSION**

For the foregoing reasons, this Court holds that it is properly vested with jurisdiction under both admiralty and federal question jurisdiction, through the Outer Continental Shelf Lands Act. Thus, the applicable law to Plaintiff's tort claims, in light of this jurisdictional overlap, is general maritime law.

New Orleans, Louisiana on this 15th day of February, 2012.

_____
**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT COURT JUDGE**