UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

SCOTT JOSEPH DELAHOUSSAYE                                    CIVIL ACTION

VERSUS                                                        NO. 10-2624

PISCES ENERGY, LLC, ET AL                                     SECTION "H" (5)

**REASONS FOR SUMMARY JUDGMENT**

The matters before the Court are a Motion for Partial Summary Judgment filed by Pisces Energy, LLC (Doc. 171); a Motion for Summary Judgment filed by Crescent Drilling Foreman, Inc. (Doc. 192); a Motion for Summary Judgment filed by Lexington Insurance Company (Doc. 193); and a Motion for Partial Summary Judgment filed by Pisces Energy, LLC (Doc. 203).

**BACKGROUND**

Facts

Pisces Energy LLC (hereinafter "Pisces"), formerly known as the Palm Energy Group, LLC, is the owner of oil production platforms located in the Mustang Island oil block off the coast of Texas. Specifically, Pisces is the owner of the platform at issue in this case, Mustang Island 739-A (hereinafter "MI-739-A"). It is uncontested that the MI-739-A is a fixed platform, permanently embedded in the subsoil and seabed in the Gulf of Mexico and adjacent to the coast of Texas on

the Outer Continental Shelf, approximately seventy-five (75) miles from the coast of Texas.

In August of 2009 Pisces determined that several of the existing production wells on the MI-739-A were in need of workover recompletion work. Accordingly, Pisces called upon the relevant companies to perform this work.

Crescent Drilling and Production, Inc. (hereinafter "Crescent") was hired to furnish a Consultant to manage the workover. In place at this time was a Master Service Agreement between Crescent and Pisces that was executed on June 26, 2007. The Master Service Agreement provided that Crescent would furnish well-site consultants on job assignments for use by Pisces when requested. Crescent, in turn, provided Richard Boutte (hereinafter "Boutte") as the manager for the project.

In addition to Crescent and Boutte, Pisces had a contract with Warrior Energy Services, a subsidiary of Superior Energy Services (hereinafter "Warrior"), whereby Warrior agreed to provide a crew to perform work on the MI-739-A. Scott Delahoussaye was employed by Warrior as a coiled tubing assistant. All parties agree that Mr. Delahoussaye is a part of the "Palm Group" as described in the Master Service Agreements.

Pisces also contracted with Performance Energy Services, LLC (hereinafter "Performance"), for the services of a crane operator to perform work on the MI-739-A. In turn, Performance provided Shalico Andow to conduct the crane operations for the workover on the MI-739-A. The furnishing of Mr. Andow was made pursuant to a request by Pisces under a Master Service Agreement executed on November 10, 2006 between Performance and Pisces.

Prior to Mr. Boutte's arrival on the platform, he was provided with written

workover/recompletion procedures describing the specific steps to be performed on the MI-739-A.

This litigation arises out of the claims asserted by Scott Delahoussaye (hereinafter "Delahoussaye") regarding an incident that occurred on August 22, 2009. In the afternoon of August 22, 2009, it became necessary to move a "track stack" from the MI-739-A to the M/V LEEZA RENEE. The M/V LEEZA RENEE was a supply vessel positioned adjacent to the MI-739-A platform. In preparation for the transfer Delahoussaye was positioned on the M/V LEEZA RENEE. It is undisputed that Delahoussaye was aboard the M/V LEEZA RENEE for the purpose of assisting with this cargo transfer at the time of the incident. Delahoussaye alleges that he was injured during this transfer when he was struck by a piece of pipe that became dislodged.

This Court previously held that the law applicable to Plaintiff's tort claims, in light of a jurisdictional overlap between the Outer Continental Shelf Lands Act (hereinafter "OCSLA") and admiralty, is general maritime law (see Doc. 180).

The Motions

On January 11, 2012 Crescent filed a Crossclaim for Contractual Defense and Indemnity against Pisces (Doc. 156). In its Crossclaim Crescent contends that, pursuant to the terms of the Master Service Agreement it had in place with Pisces at the time of the incident, it is entitled to defense and indemnity from Pisces under general maritime law; that the Texas Oilfield Anti-Indemnity Act ("TOAIA") does not apply; and that even if the TOAIA did apply, it would not bar the indemnity provision in the master service agreement.

On February 23, 2012 Lexington Insurance Company (hereinafter "Lexington") filed a Crossclaim against Pisces (Doc. 182). Lexington is the commercial general liability insurance carrier

of Crescent and Boutte. Lexington echoed the arguments of its insureds in its Crossclaim.

On March 3, 2012 Performance filed a Crossclaim against Pisces (Doc. 210). In its Crossclaim Performance prays for a Judgment to be entered in their favor holding that Performance and its insurers are entitled to defense and indemnity from Pisces for the claims brought by Plaintiffs under their Master Service Agreement.

Subsequent to the filings of the Crossclaims, corresponding Motions for Summary Judgment were filed. Pisces filed a Motion for Partial Summary Judgment (Doc. 171) moving the Court to enter an order of summary judgment dismissing the Crossclaim for Contractual Defense and Indemnity of Crescent. Crescent and Boutte filed a cross Motion for Summary Judgment (Doc. 192) asserting that Pisces should be compelled to defend and indemnify Crescent. Lexington filed a Motion for Summary Judgment (Doc. 193) adopting Crescent and Boutte's Motion for Summary Judgment seeking defense and Indemnity from Pisces. Lastly, Pisces filed a Motion for Partial Summary Judgment (Doc. 203) seeking for the Court to dismiss the Lexington's Crossclaim against Pisces.

The Issue

The issue presented in the various Motions for Summary Judgment before the Court is whether the Master Service Agreements executed between Performance and Pisces and Crescent and Pisces is a maritime contract. If deemed a maritime contract, the defense and indemnity obligations contained therein are valid and enforceable. If the contract is not a maritime contract then the adjacent state law of Texas would apply, including the Texas Oilfield Anti-Indemnity Act, thereby invalidating Pisces indemnity obligation to Performance and Crescent.

Arguments of the Parties

Pisces argues in both of their Motions for Summary Judgment that the applicable law for the tort issues is different from the applicable law for contractual issues. Thus, Pisces alleges that because the Master Service Agreement ("MSA") is non-maritime in nature then maritime law does not apply. If maritime law does not apply then, by virtue of the OCSLA, the law of the adjacent state would apply, Texas, thereby barring the claim for defense and indemnity under the TOAIA.

Crescent and Boutte allege that the terms of the Pisces-Crescent MSA is clear in that Pisces agreed to protect and indemnify Crescent. Crescent further states that the MSA should be interpreted as a maritime contract, and thus should be governed by general maritime law, which does not invalidate the defense and indemnity provisions of the MSA. Lexington, as insurer for Crescent and Boutte, adopted the argument of Crescent and Boutte and their own Motion for Summary Judgment.

Performance argues that the defense and indemnity obligations made a part of the Pisces-Performance MSA cover any claims brought by Delahoussaye. Furthermore, they assert that the MSA provides that the agreement and legal relationships of the parties shall be governed by the General Maritime Law if the work is performed in the federal offshore waters. Performance also noted that the tort in this case is governed by maritime law.

**LAW AND DISCUSSION**

In a previous Judgment of this Court it was held that the law applicable to Delahoussaye's tort claims would be general maritime law. Although the United States Supreme Court has made

it clear that the situs rule is applicable in tort cases, "it does not follow that contract cases triggered by an underlying tort depend on the situs of that tort, i.e., the location of that occurrence." *Grand Isle Shipyard, Inc. v. Seacor Marine, LLC,* 589 F.3d 778, 785 (5th Cir. 2009). Thus, this Court is required to distinguish between a contractual indemnity claim and the underlying incident. *Grand Isle*, 589 F.3d at 786.

Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment may be granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See* Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Before granting a summary judgment motion, a Court must be satisfied that no reasonable trier of fact could find in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)*; see also Boeing Co. v. Shipman,* 411 F.2d 365 (5th Cir., 1969). All evidence and inferences drawn therefrom must be considered in the light most favorable to the non-moving party when determining whether a material issue of fact exists. This Court submits that there exists no genuine issues of material fact surrounding the contractual matters, thereby making them ripe for summary judgment determination.

The Contract

This Court recognizes that the claim for indemnity by Crescent and Performance is one that is based in contract rather than in tort. The indemnity provisions that both Defendants cite stem

from their respective Master Service Agreements with Pisces.

Both the Pisces-Crescent and the Pisces-Performance Master Service Agreements provide the following indemnity language:

> [Pisces] shall defend, protect, indemnify, and hold harmless Contractor, its employees, subsidiaries, affiliated companies, joint venturers, partners, contractors, agents, invitees, and all of their respective officers, directors, and employees (hereinafter sometimes collectively referred to as the "Contractor Group") from and against all suits, actions, claims, liabilities, damages, and demands based upon personal injury, death, or property damage or loss, whenever occurring, suffered by any of the Palm Group, where the claim or loss arises out of, is connected with, incident to, or is directly or indirectly resulting from or relating to the performance of this Agreement or out of any related or unrelated activities in the vicinity thereof, whether the claim is groundless or not, and whether the loss or injury is caused in whole or in part by the negligence or fault of any of the Contractor Group or the condition of any vehicle, vessel, aircraft, or equipment or by defect in any equipment or property of the Contractor Group.

Additionally, in general, the Crescent-Pisces MSA and the Performance-Pisces MSA have substantially similar provisions. Thus, both MSA's cite that the "geographical area for performance under this agreement shall cover such areas as designated by ECP in any work order (oral or written) requested of the contractor." Moreover, it states that "the work subject to this Agreement shall include any goods or services that are requested by representatives of [Pisces]" and that any goods or services agreed to be performed and/or provided by Contractor shall be performed and/or provided pursuant to the terms of this Agreement and those of any work order. Neither MSA provides for the specific services to be performed by the Contractors, e.g. Crescent and/or Performance.

<u>The Nature of the Contract: Maritime or Non-Maritime</u>

The first issue that the Court must decide is whether the Crescent-Pisces MSA and the Performance-Pisces MSA are maritime contracts. *See Grand Isle Shipyard, Inc. v. Seacor Marine,*

*LLC,* 589 F.3d 778, 789 n.9 (5th Cir. 2009) (stating that "in determining whether state law applies in an OCSLA action, predicated on a contract, it is permissible to consider whether the contract at issue is a maritime contract before considering whether OCSLA situs has been established").

In determining whether a contract is maritime, the Court's consideration should be two-fold. *Davis and Sons, Inc. v. Gulf Oil Corporation*, 919 F.2d 313 (5th Cir. 1990), *reh'g denied*, 924 F.2d 1054 (1991). The Court must analyze the historical treatment of similar contracts in the jurisprudence and also make a fact-specific inquiry. *Davis*, 919 F.2d at 316. The six factors to be considered include: (1) what does the specific work order in effect at the time of the injury provide; (2) what work did the crew assigned under the work order actually do; (3) was the crew assigned to work aboard a vessel in navigable waters; (4) to what extent did the work being done relate to the mission of the vessel; (5) what was the principal work of the injured worker; (6) what work was the injured worker actually doing at the time of the injury. *Id.*

In *Davis*, the Court interpreted a Master Service Agreement whereby the contractor would provide labor and general contracting services. *Davis*, 919 F.2d at 314. The document did not further specify any work to be performed. *Id.* The work to be performed was provided in later, periodic work orders calling for the performance of specific services. *Id.* This Court finds that the situation in this case is substantially similar to that presented to the *Davis* Court. Thus, where the contract consists of both an MSA and subsequent work order(s), the two must be interpreted together in evaluating whether the contract is a maritime contract. *Davis*, 919 F.2d at 315.

As both Crescent and Pisces agree, the contract at issue concerns the use of "company men" provided by Crescent to Pisces in order to implement certain workover/recompletion

operations taking place on Pisces' platform. Crescent and Pisces further agree, as does the Court, that there is no prior Fifth Circuit case in which the maritime or non-maritime nature of a contract specifically involving workover recompletion and/or coiled tubing work like that performed on the MI-739-A platform. Lastly, the Court further concurs with both Crescent and Pisces that the cases involving contracts for analogous work, such as wireline services, appear to support the conclusion that such contracts are non-maritime in nature. *See Thurmond v. Delta Well Surveyors*, 836 F.2d 952 (5th Cir. 1988); *see also Domingue v. Ocean Drilling and Exploration Co.*, 923 F.2d 393 (5th Cir. 1991).

On the other hand, Crescent argues that there are a line of cases involving similar circumstances to the case at bar which demonstrate that the Crescent-Pisces MSA should be considered a maritime contract. In each of these cases, the contract at issue was ultimately deemed to be a maritime contract because, although the use of a vessel was not specifically mentioned in the contract, the use of a vessel ultimately became necessary in order to accomplish the work required by the contract. *See Devon La. Corp. v. Petra Consultants, Inc.,* 247 Fed. Appx. 539 (5th Cir. 2007); *see also Hoda v. Rowan Companies, Inc.,* 419 F.3d 379, 381 (5th Cir. 2005). Performance echoes this argument and asserts that the jurisprudence supports the conclusion that the Performance-Pisces MSA was a maritime contract as it called for the unloading of vessels.

This Court is inclined to follow the *Thurmond* and *Domingue* line of cases. First, while Andow and Boutte performed operations that sometimes involved the loading or unloading of vessels, the MSA between Performance and Pisces and Crescent and Pisces does not reference maritime services. Second, the "company men" were placed on the MI-739-A for work relating to

the workover/recompletion of the platform itself.  Lastly, while a utility vessel, namely the M/V LEEZA RENEE, was placed near or abutting the platform, it was utilized as additional space for the MI-739-A.  Thus, this Court finds that the M/V LEEZA RENEE was incidental, as opposed to inextricably intertwined, to the work being done on the MI-739-A.  As such, this element of the analysis leads to the conclusion both the Pisces-Crescent MSA and the Pisces-Performance MSA are non-maritime in nature.

The first factor requires the Court to consider what the specific work order in effect at the time of the injury provided.  There is no specific work order in place for the date of Mr. Delahoussaye's accident.  The invoices for Boutte, however, indicate that the work he was to be performing from August 21, 2009 through August 31, 2009 was managing and directing the workover recompletion and/or coiled tubing work on the MI-739-A.  Additionally, it is undisputed that Pisces contracted with Performance for the services of Andow to perform crane operations on the MI-739-A. Thus, this Court finds that both Boutte and Andow were performing work directly related to the service and/or operation of oil and gas wells on the MI-739-A fixed platform.  This factor lends itself to the Master Service Agreements being non-maritime in nature.

The second factor asks the Court to analyze what work the crew assigned under the work order actually did.  The record before the Court indicates that the work that the crew was performing was related to the workover/recompletion of the MI-739-A. Delahoussaye as a coiled tubing assistant, Andow as a crane operator and Boutte as the person in charge of managing and/or directing the workover recompletion.  It must be noted, however, that as a part of these operations the crew had to move equipment and cargo between the MI-739-A and the vessel, the

M/V LEEZA RENEE. Thus, this factor is dispositive of the maritime nature of the contract.

The third factor asks the Court to question whether the crew was assigned to work aboard a vessel in navigable waters. While the Court does note that the crew did utilize a vessel in its workover recompletion of the MI-739-A, the facts are very clear in that a crew was not actually assigned to work aboard a vessel. While Boutte may have directed men on and off the vessel in order to help the unloading or loading of cargo and/or equipment, the crew was actually assigned to work on the MI-739-A platform in their capacity to facilitate the workover recompletion. Thus, this factor is indicative of the Master Service Agreements being non-maritime in nature.

The fourth factor asks the Court to question to what extent did the work being done relate to the mission of the vessel. The record is clear in that the crew was assigned to do work that had to do with the workover recompletion on the MI-739-A, not with the mission of the M/V LEEZA RENEE. Hence, this factor lends itself to the contracts being non-maritime.

The fifth factor asks what the principal work of the injured worker was. It is undisputed that Mr. Delahoussaye was hired to be a coiled tubing assistant for purposes of the workover recompletion on the MI-739-A platform. While it is uncontested that Delahoussaye was allegedly injured while aboard the M/V LEEZA RENEE for purposes of assisting in a cargo transfer, the Court finds that the loading and unloading of cargo was not the principal work of Delahoussaye. As such, this factor weighs in favor of the Master Service Agreements being non-maritime.

The final and sixth factor asks the Court to determine what work the injured worker was performing at the time of the injury. As noted above, it is undisputed that Delahoussaye was aboard the M/V LEEZA RENEE for the purpose of assisting in a cargo transfer at the time of his

alleged accident. The Court has consistently held that the loading and unloading of a vessel is substantially related to traditional maritime activity. *Hamm v. Island Operating Co., Inc.* 2011 WL 5570644, 3 (5th Cir. 2011) citing *Drachenberg v. Canal Barge Co., Inc.* 571 F.2d 912, 917 (5th Cir. 1978); *see also Bachemin v. Mitsuie and Co. (USA, Inc.)* 713 F.Supp. 204, 206 (E.D.La.,1989). Thus, this Court finds that this factor lends itself towards the conclusion that the Master Service Agreements are maritime in nature.

The analysis of these factors reveal to this Court that the Pisces-Performance Master Service Agreement and the Pisces-Crescent Master Service Agreement are non-maritime contracts.

Applicable Law

The OCSLA and the appropriate surrogate state law can apply when the contract is non-maritime, even when the plaintiff is injured on a vessel (a non-OCSLA situs). *Wagner v. McDermott*, 899 F.Supp. 1551, 1555 (W.D. La. 1994); *see also Domingue v. Ocean Drilling & Exploration Co.*, 923 F.2 393, 398 (5th Cir. 1991). Thus, this Court must now determine whether the OCSLA and the surrogate state law, in this case Texas, will apply to the non-maritime contracts between Crescent and Pisces and Performance and Pisces.

The Outer Continental Shelf Lands Act (OCSLA) provides that "the district courts of the United States shall have jurisdiction of cases and controversies arising out of, or in connection with (A) any operation conducted on the Outer Continental Shelf which involves exploration, development or production of the minerals, of the subsoil and seabed of the outer continental shelf, or which involves the right to such minerals." 43 U.S.C. § 1349(b)(1).

Furthermore, to the extent that the laws of the adjacent state are not inconsistent with the

OCSLA or with other federal laws, then the laws of the adjacent states are considered to apply as if the law of the United States on the Outer Continental Shelf. 43 U.S.C. §1333(a)(1), (2)(A). Thus, the OCSLA generally incorporates the law of the adjacent state as "surrogate" federal law.

In *Union Texas Petroleum Corp. v. PLT Engineering* ("PLT"), the United States Fifth Circuit articulated the following three-part test to be used in determining whether adjacent state law will apply as surrogate federal law under the OCSLA: (1) the controversy must involve a situs covered by OCSLA (i.e. the subsoil, seabed, or artificial structures permanently or temporarily attached thereto); (2) federal maritime law must not apply of its own force; and (3) state law must not be inconsistent with federal law. 895 F.2d 1043, 1047 (5th Cir. 1990).

### A.     THE *PLT* TEST

(1) OCSLA Situs

The Court in *Grand Isle Shipyard, Inv. v. Seacor Marine, LLC* held that "in determining the first condition of the *PLT* test, a contractual indemnity claim (or any other contractual dispute) arises on an OCSLA situs of a majority of the performance called for under the contract is to be performed on stationary platforms or other OCSLA situses enumerated in 43 USC §1333(a)(2)(A)." 589 F.3d 778, 787 (5th Cir. 2009). The *Grand Isle* Court went on to state that "[i]t is immaterial whether the underlying incident that triggers the indemnity obligation occurs on navigable waters." *Id.*

It is undisputed that the MI-739-A is a platform permanently affixed to the subsoil and seabed, with its primary purpose being the extraction of oil or other minerals. Additionally, the MI-739-A has a status as an artificial installation permanently attached to and erected on the seabed

of the Outer Continental Shelf with the purpose of resource exploration, development, and production. *See* 43 U.S.C. § 1331, et seq.; *see also Bartholomew v. CNG Producing Co.*, 832 F.2d 326 (5th Cir. 1987).

It is uncontested that, pursuant to the Crescent-Pisces MSA, Boutte was provided to be the person in charge of a workover recompletion on the MI-739-A. Additionally, pursuant to the Performance-Pisces MSA, Andow was provided to perform the crane operations needed for the workover recompletion on the MI-739-A. It is evident to this Court that the situs of both the MSA and the orders for the company men were in relation to the workover recompletion on the MI-739-A fixed platform. Thus, in accordance with the jurisprudence of this Court, this Court holds that the indemnity dispute in this case arises from an OCSLA situs as the majority of the work called for under the contract was to be performed on stationary platforms on the Outer Continental Shelf. *See Grand Isle*, 589 F.3d at 789.

(2) Federal Maritime Law Must Not Apply Of Its Own Force

In contract disputes, maritime law will apply "of its own force" if the agreement is found to be a maritime contract. See *Union Texas Petroleum Corp. v. PLT Engineering*, 895 F.2d 1043 (5th Cir. 1990); see *also Davis & Sons, Inc. v. Gulf Oil Corp.*, 919 F.2d 313 (5th Cir. 1990). As discussed at length by this Court, the Crescent-Pisces MSA and the Performance-Pisces MSA are not maritime contracts. Therefore, maritime law does not apply of its own force to the contractual indemnity issues presented to this Court.

(3) State Law Not Inconsistent with Federal Law

It is undisputed that the MI-739-A is a fixed platform located in the Mustang Island Block

739, in the Gulf of Mexico and adjacent to the coast of Texas on the Outer Continental Shelf, approximately seventy-five (75) miles from the coast. Therefore, it would be Texas state law that would be applicable. Specifically, the TOAIA would apply as the proper state anti-indemnity statute. The Court notes that the application of state law by way of an anti-indemnity statute is not inconsistent with federal law. *See Knapp v. Chevron USA, Inc.,* 781 F.2d 1123, 1130 (5th Cir. 1986); *see also Smetna v. Apache Corp.,* 2011 WL 3679141 at *6 (W.D. La. 2011).

It is evident from the analysis of these three factors that the surrogate state law of Texas will apply under the OCSLA.

**B.      CHOICE OF LAW**

The Court must also consider whether the choice-of-law provisions in the Crescent-Pisces MSA and the Performance-Pisces MSA override any other legal basis for determining the applicable law. Both of the Master Service Agreements state that it shall be governed by general maritime law. The Court, however finds that general maritime law would not apply of its own right, since, based on the analysis above, the OCSLA would be the applicable law.

The Fifth Circuit addressed an almost identical issue in *Matte v. Zapata Offshore Co.,* 784 F.2d 628 (5th Cir.1986). In *Matte*, the Fifth Circuit was presented with the question of whether a choice-of-law provision selecting general maritime law in an indemnity contract trumped the application of OCSLA. *See Id.* at 629. The Fifth Circuit held that the choice-of-law provision in the master service agreement between the contractor and the owner of an oil rig, which specified that general maritime law governed disputes, violated both federal and state public policy. As a result, the *Matte* Court voided the provision of the contract selecting general maritime law instead of

OCSLA as the governing law. *Id.* at 631–32.

Looking to *Matte*, this Court finds that the choice-of-law provisions in the contract between Crescent and Pisces and Performance and Pisces are void since they conflict with the application of OCSLA. Thus, Texas substantive law applies to the contractual claims between Pisces and Crescent and Pisces and Performance.

Texas Oilfield Anti-Indemnity Act

As this Court has discussed, Texas state substantive law will be applied to the contractual issues presented to it. Pisces argues that since Texas state law applies, the Texas Oilfield Anti-Indemnity Act is applicable to the case at hand and voids the indemnity provisions in the Crescent-Pisces MSA and the Performance-Pisces MSA. This Court agrees.

As a general rule, the TOAIA voids indemnity provisions in agreements "pertaining to a well for oil, gas, or water or to a mine for a mineral" if those agreements seek to indemnify a person for his own negligence. Tex. Civ. Prac. & Rem. Code §127.001, et seq. A contract pertains to a well if it requires the rendering of well or mine services. *Id.* Mores specifically, this includes: "the reworking, repairing, improving... or otherwise rendering [of] services in connection with a well drilled to produce or dispose of oil, gas, other minerals or water." *Id.*

It is undisputed that the MSA between Crescent and Pisces and the MSA between Performance and Crescent are both agreements that pertains to a well as described under Texas state law. The record before this Court clearly indicates that both companies and their "company men" were provided to perform workover recompletion procedures on the MI-739-A. As such, both the Crescent-Pisces MSA and the Performance-Pices MSA clearly pertain to a well and is

related to the production of oil and gas. Due to the fact that TOAIA is applicable, then the indemnity provisions within the Master Service Agreements are void as a matter of law.

While there is a statutory exception to the TOAIA, known as the "Safe Harbor Provision," that permits indemnity provisions that are supported by liability insurance, this Court does not find that the Safe Harbor Provision applies.

The Safe Harbor Provision provides that indemnity language in a contract that falls under the TOAIA is not void if the indemnity obligations are reciprocal and if the parties agree in writing that the indemnity obligation will be supported by liability insurance coverage to be furnished by the indemnitor. Thus, an indemnity provision wherein the indemnity obligations are reciprocal and supported by equal amounts of insurance by the respective indemnitor is enforceable. Tex. Civ. Prac. & Rem. Code §127.003-.005

The Master Service Agreements in place do not contain reciprocal indemnity provisions and they require both Crescent and Performance to procure and maintain insurance to cover its indemnity obligations under the contract. The Court does not find the obligations contained in either MSA to be "mutual indemnity obligations." Additionally, the Safe Harbor Provision is not met because the MSA contains no requirement for mutual insurance. In fact, this Court notes, there are no insurance requirements of Pisces.

In conclusion, since the insurance requirements of the Safe Harbor Provision are not met, the MSA between Crescent and Pisces and the MSA between Performance and Pisces violates the provisions of the TOAIA. As such, this Court finds that Pisces does not owe a defense and indemnity to Crescent under their respective MSA and Pisces does not owe a defense and

indemnity to Performance under their respective MSA.

**CONCLUSION**

For the foregoing reasons, this Court holds that the Motion for Partial Summary Judgment filed by Pisces Energy, LLC (Doc. 171) is GRANTED; the Motion for Summary Judgment filed by Crescent Drilling Foreman, Inc. (Doc. 192) in DENIED; the Motion for Summary Judgment filed by Lexington Insurance Company (Doc. 193) is DENIED; and the Motion for Partial Summary Judgment filed by Pisces Energy, LLC (Doc. 203) is GRANTED.

New Orleans, Louisiana on this 30th day of March, 2012.

_____
**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT COURT JUDGE**